IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-02355-WYD-CBS

LESLIE WEISE and
ALEX YOUNG,

    Plaintiffs,

v.

MICHAEL CASPER, in his individual capacity;
JAY BOB KLINKERMAN, in his individual capacity;
STEVEN A ATKISS, in his individual capacity;
JAMES A. O'KEEFE, in his individual capacity; and
JOHN/JANE DOES 1-5, all in their individual capacities,

    Defendants.

_____

# ORDER
_____

THIS MATTER is before the Court on Defendant Jenkins' Motion to Dismiss or in the Alternative for Summary Judgment[1], filed February 1, 2008 (docket #99); Defendant Klinkerman's Motion to Dismiss Based on Qualified Immunity, filed February 4, 2008 (docket #105); and Defendant Casper's Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim Upon Which Relief May Be Granted on the Basis of Qualified Immunity, filed February 1, 2008 (docket # 102).

---

[1] Defendant Klinkerman incorrectly filed this motion as both and Motion to Dismiss and a Motion for Summary Judgment. These motions should have been filed in two separate pleadings. Plaintiffs, in their response, treated the motions as a motion to dismiss and did not address the motion for summary judgment as such. In the interest of fairness and to preserve a clear record, I will only address Defendant's motion to dismiss. Defendant may file a separate motion for summary judgment if he wishes to do so. Therefore, Defendant's Motion for Summary Judgment is denied with leave to refile.

I.  FACTUAL BACKGROUND

This case arises from the March 21, 2005 appearance by President George W. Bush at the Wings Over the Rockies Air and Space Museum in Denver, Colorado. On that date, President Bush delivered a speech at the Museum on the topic of Social Security. Plaintiffs obtained tickets to attend the event. Plaintiffs arrived at the event in a vehicle owned and driven by Plaintiff Weise. The vehicle had a bumper-sticker on it that read "No More Blood for Oil." While Plaintiff Young was admitted into the Museum without incident, Plaintiff Weise was initially prevented from entering the Museum. At a security check-point, an unnamed person prevented Plaintiff Weise and a friend from entering the Museum.

Soon thereafter, Defendant Micheal Casper approached the place where Plaintiff Weise and her friend were standing with Defendant Klinkerman. Defendant Casper told Plaintiff Weise that she had been "ID'd," and stated that Plaintiff Weise and her friend would be arrested if they had "any ill intentions" or "if they tried any 'funny stuff.'" Defendant Casper then let Plaintiff Weise and her friend enter the Museum.

Defendant Casper approached Plaintiffs and instructed them to leave the Museum. Defendant Casper escorted Plaintiffs toward a Museum exit, and then instructed another person to escort the Plaintiffs out of the Museum. At some point after the event, the Secret Service informed the Plaintiffs that they had been removed based on the bumper-sticker on Plaintiff Weise's vehicle.

I also note the procedural history of this case. On October 30, 2006, I denied Defendants Michael Casper's and Jay Klinkerman's Motions to Dismiss without

prejudice, allowing Plaintiffs limited discover related to Defendants' assertion of the qualified immunity defense in this case. Defendants appealed to the Tenth Circuit. The appeal was dismissed for lack of appellate jurisdiction. Plaintiffs were allowed to take depositions of Casper and Klinkerman for the limited purpose of identifying other potential defendants so Plaintiffs could file claims against them within the relevant statute of limitations. See Order, Feb. 15, 2007. As a result of the information obtained during those depositions, Plaintiffs now agree that Defendants were closely supervised by public officials and are entitled to assert qualified immunity. Plaintiffs also agreed on the record at the status conference on January 7, 2008, that Defendants were closely supervised by government officials.

II. ANALYSIS OF MOTIONS TO DISMISS

    A. Defendant Jenkins

        i. The Parties Positions

Defendant Jenkins asserts that I should dismiss Plaintiffs' claims against him because Plaintiffs cannot satisfy their burden of establishing that he is subject to personal jurisdiction. Jenkins asserts that his alleged establishment of a national policy is insufficient to establish a jurisdictional nexus in a state where the policy is applied. Defendant Jenkins served as Director of the White House Office of Advance from January 15, 2003 to November 30, 2004. Defendant Jenkins asserts that after departing the Advance Office, he played no role in organizing, planning or supervising any domestic or international trips by the President. Further, Defendant Jenkins asserts that he played no role in planning, organizing or supervising the March 21, 2005,

presidential event in Denver. Defendant Jenkins did not attend the presidential event in Denver, and asserts that he had no knowledge of the event until after it occurred. Defendant asserts that he had no communications with the other Defendants concerning the event or during its occurrence. Defendant Jenkins is currently a resident of Texas. He has never been a resident of Colorado, nor has he owned property or assets in Colorado. Jenkins asserts that he has never engaged in any transactions or activities in Colorado during the time he was Director of the Advance Office, and that he has not visited Colorado for any reason since at least 2001.

Plaintiffs allege that Jenkins, by promulgating the policy that resulted in the alleged violation of Plaintiffs' Constitutional rights, took personal actions that caused the Plaintiffs' unconstitutional viewpoint-based ejection from a public forum in Colorado. Further, Plaintiffs assert that the fact that Defendant Jenkins was not in Colorado on March 21, 2008 and the fact that he was no longer in office does not prevent the exercise of personal jurisdiction since the allegations in the complaint are that he enacted the policy that was implemented when the Plaintiffs were ejected.

### ii. Personal Jurisdiction Analysis

The plaintiff bears the burden of establishing personal jurisdiction, although at the preliminary stages of the litigation this burden is light. *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). "Where . . . there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Id.* "The allegations in the complaint must be

taken as true to the extent they are uncontroverted by the defendant's affidavits." *Id.* "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Id.*

The Court must engage in a two-step analysis in determining whether the exercise of personal jurisdiction is appropriate. *Wenz v. Memery Crystal,* 55 F.3d 1503, 1507 (10th Cir. 1995). The Court "must initially determine whether the exercise of jurisdiction is sanctioned by the Colorado long-arm statute, which is a question of state law, . . . and then determine whether the exercise of jurisdiction comports with the due process requirements of the Constitution." *Id.* at 1506-07. Because Colorado's long-arm statute has been construed by the Colorado Supreme Court as allowing personal jurisdiction to the full extent permitted under federal law, *Safari Outfitters, Inc. v. Superior Ct.*, 448 P.2d 783, 784 (Colo.1968), "[the court's] analysis collapses into a single inquiry, whether the exercise of personal jurisdiction over [the defendant] comports with due process." *Nat. Business Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1253 (D. Colo. 2000), *aff'd*, 16 Fed. Appx. 959 (10th Cir. 2001).

"[D]ue process requires only that ... [the defendant] have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) (quotation omitted). Critical

to the due process analysis "'is that the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there.'" *Id.* (quotations omitted). The reasonable anticipation requirement is satisfied if the defendant has engaged in "some act by which [it] purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

The "minimum contacts" requirement of due process may be met in two ways, through showing the existence of either specific jurisdiction or general jurisdiction. *Trierweiler*, 90 F.3d at 1532. It appears that Plaintiffs are relying upon the doctrine of specific jurisdiction. Thus, I must address whether the exercise of specific personal jurisdiction over Defendant would offend due process.

The specific jurisdiction inquiry involves two steps. *Id.* First, the court must "ask whether the nonresident defendant has 'minimum contacts' with the forum state such that 'he should reasonably anticipate being haled into court there.'" *Id.* (quotation omitted). "A defendant may reasonably anticipate being subject to suit in the forum state 'if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id.* (quotation and internal quotation marks omitted). Second, if the defendant has sufficient minimum contacts, "we ask whether the court's 'exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice.'" *Id.* (quotation and internal quotation marks omitted). "This question turns on whether the exercise of personal jurisdiction is 'reasonable' under the

circumstances of a given case." *Id.* (quotation omitted).

Plaintiffs' argument has been rejected in a case that is directly on point to the instant case. In *Rank v. Hamm*, 2007 WL 894565 *12 (S.D.W. Va. March 21, 2007), a case involving a factual situation strikingly similar to this one wherein Defendant Jenkins was also a defendant, plaintiffs were asked to leave an event at which the President was speaking for wearing t-shirts that displayed messages expressing disagreement with the President and his policies. The court held that the adoption of a nationwide policy did not result in the policymaker directing personal activities toward the forum state. *Id.* The court, in a footnote, also noted that such an argument appears to attempt to "capture of Jenkins in an overreaching, positional manner more akin to what one might expect in an official capacity suit." *Id.*

In this case, although not explicit, it appears that Plaintiffs also assert that Jenkins purposefully availed himself to the forum because his agents committed the deprivation. They rely heavily upon, *Elmaghraby v. Aschcroft*, 2005 WL 2375202 (E.D.N.Y. Sept. 27, 2005), rev'd on other ground sub nom. *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007), emphasizing the *Elmaghraby* language where the court explained, a court may constitutionally exercise jurisdiction over a non-domiciliary "if a person or *through an agent*, he ... commits a tortuous act within the state.... *Id.* at *9 (emphasis added by Plaintiffs). I do not find that case to be persuasive. It is distinguishable from the instant case because Defendant Jenkins had left the White House prior to March 21, 2005 and had no ability to control the conduct of the other Defendants.

Finally, Plaintiffs contend that *Calder v. Jones*, 465 U.S. 783 (1984) directs that

circumstances of a given case." *Id.* (quotation omitted).

Plaintiffs' argument has been rejected in a case that is directly on point to the instant case. In *Rank v. Hamm*, 2007 WL 894565 *12 (S.D.W. Va. March 21, 2007), a case involving a factual situation strikingly similar to this one wherein Defendant Jenkins was also a defendant, plaintiffs were asked to leave an event at which the President was speaking for wearing t-shirts that displayed messages expressing disagreement with the President and his policies. The court held that the adoption of a nationwide policy did not result in the policymaker directing personal activities toward the forum state. *Id.* The court, in a footnote, also noted that such an argument appears to attempt to "capture of Jenkins in an overreaching, positional manner more akin to what one might expect in an official capacity suit." *Id.*

In this case, although not explicit, it appears that Plaintiffs also assert that Jenkins purposefully availed himself to the forum because his agents committed the deprivation. They rely heavily upon, *Elmaghraby v. Aschcroft*, 2005 WL 2375202 (E.D.N.Y. Sept. 27, 2005), rev'd on other ground sub nom. *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007), emphasizing the *Elmaghraby* language where the court explained, a court may constitutionally exercise jurisdiction over a non-domiciliary "if a person or *through an agent*, he ... commits a tortuous act within the state.... *Id.* at *9 (emphasis added by Plaintiffs). I do not find that case to be persuasive. It is distinguishable from the instant case because Defendant Jenkins had left the White House prior to March 21, 2005 and had no ability to control the conduct of the other Defendants.

Finally, Plaintiffs contend that *Calder v. Jones*, 465 U.S. 783 (1984) directs that

jurisdiction is appropriate here.  In *Calder*, the Supreme Court held that California had jurisdiction over Florida reporters who had written an allegedly libelous article for the National Enquirer about a California actress.  The Court noted that California "[was] the focal point both of the story and the harm suffered." *Id.* at 789.  Here, it is clear that Colorado was not the focal point of policy at issue.  It is undisputed that Defendant Jenkins had no knowledge of Plaintiffs or the event until afterwards.   I find that Plaintiffs have not established a prima facie showing of minimum contacts with Colorado and Defendant Jenkins Motion to Dismiss is granted.

B. Defendants Casper and Klinkerman

    i.    Standard of Review

In ruling on a Motion to Dismiss pursuant to 12(b)(6), the standard used to be that the court "'must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996), *cert. denied*, 522 S.Ct. 858 (1997) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n. 1 (10th Cir. 1994)).  Thus, until recently, a dismissal was only warranted where "it appear[ed] beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *The Ridge at Red Hawk, L.L.C. v.Schneider*, 2007 WL 1969681 at *3 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  "However, the Supreme Court recently decided that 'this observation has earned its retirement,' and it has prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atlantic*

*Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007)). "The Court explained that a plaintiff must 'nudge [][his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1974). "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Id.*

    ii.    The Positions of the Parties as to Qualified Immunity

Defendant Klinkerman asserts that he is entitled to qualified immunity because (1) he acted as an agent of, and was substantially supervised by the White House, (2) he was acting as a volunteer, and (3) his conduct did not violate a constitutional right.

Defendant Casper asserts that he is entitled to qualified immunity because (1) he acted as an agent of, and was closely supervised by, the White House; and (2) his conduct did not violate Plaintiffs' constitutional rights.

Plaintiffs, in response to both Defendants Klinkerman and Casper Motions state that they do not object to Defendants' invocation of the qualified immunity doctrine, and instead argue that Casper and Klinkerman's actions, in excluding Plaintiffs on the basis of their viewpoint, violated the First Amendment.

    iii.    Analysis

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person should have known. *Harlow* places a presumption in favor of immunity of public officials acting in their individual capacities. *Schalk v. Gallemore*, 906 F.2d 491 (10th Cir. 1990). The Tenth Circuit has indicated that the defense of qualified immunity should be raised in the answer or in a motion to dismiss or for summary judgment. *Quezada v. County of Bernalillo*, 944 F.2d 710, 718 (10th Cir. 1991). "Defendants who are unsuccessful in having a lawsuit dismissed on qualified immunity grounds before trial may reassert the defense at trial or after trial." *Id.*

Once the defense is raised by a defendant, the burden shifts to the plaintiff to come forward with facts or allegations sufficient to show both "'that the defendant's actions violated a constitutional or statutory right'" and that the right "was clearly established at the time of the defendant's unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quoting *Albright v. Rodriguez*, 51 F.3d 15531, 1534 (10th Cir 1995)). *See also Workman v. Jordan*, 32 F.3d 457, 479 (10th Cir. 1994); *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996).

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. . . . In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a law is clearly established.

*Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2131, 2156 (2001) (citations omitted). In other words, once a defendant pleads a defense of qualified immunity, the

judge should consider "not only the applicable law, but whether that law was clearly established at the time an action occurred . . . ." *Siegert v. Gilley*, 500 U.S. 226, 231 (1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert*, 500 U.S. at 232.

A plaintiff cannot defeat a defense of qualified immunity merely by alleging a violation of "extremely abstract rights." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Rather, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized sense." *Id.* at 640. "'To be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Brewer*, 76 F.3d at 1134 (quotation omitted); *see also Snell v. Tunnell*, 920 F.2d 673, 696 (10th Cir. 1990)(quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)), *cert. denied*, 111 S.Ct. 1622 (1991). *See also Cram*, 252 F.3d at 1128. Ordinarily, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (quoting *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)); *see also Patrick v. Miller*, 953 F.2d 1240 (10th Cir. 1992). This requires "'some, but not necessarily precise, factual correspondence" between cases predating the alleged violation and the facts in question in this case. *Calhoun v. Gaines*, 1992 WL 387385 at

4 (10th Cir. 1992). In essence, this standard requires officials to know well developed legal principles and to relate and apply them to analogous factual situations." *Id.* However, "a single case from another circuit is not sufficient to clearly establish the law of this circuit." *Stump v. Gates*, 986 F.2d 1429 (10th Cir. 1993) (unpublished opinion)(1993 WL 33875); *see Woodward v. City of Worland*, 977 F.2d 1392, 1397 (10th Cir. 1992). The burden is on the plaintiffs to show that the law was clearly established at the time of the alleged violation. *Patrick,* 953 F.2d at 1243; *Dixon v. Richer*, 922 F.2d 1456, 1460 (10th Cir. 1991).

If the law is clearly established, the question becomes whether the Defendants' conduct was objectively reasonable in light of the clearly established law. *Breidenbach v. Bolish*, 126 F.3d 1288, 1291 (10th Cir. 1997). The test is one of objective reasonableness, in light of the law at the time of the alleged violation. *Juntz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992). The issue of whether the law is clearly established is not a jury question. *Lutz v. Weld County School Dist.*, 784 F.2d 340, 343 (10th Cir. 1986); *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988). Plaintiff's failure to show that the law is clearly established "calls for the entry of judgment in favor the defendants who raised the defense." *Id.* Where the court concludes that the law controlling the constitutional violations alleged is "murky", the proper conclusion is that a reasonably objective person would not necessarily have known that the acts complained of were clearly violative of constitutional rights. *Eckhart v. Crofoot*, 1988 WL 10440 at *4 (D. Colo. 1988).

On the other hand, if the law was clearly established, the defense "ordinarily

should fail, since a reasonably competent public official should know the law concerning his conduct." *Lutz*, 784 F.2d at 342; *Street v. Parham*, 929 F.2d 537, 540 (10th Cir. 1991). The only exception to this is where the official pleading an immunity defense "'claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard.'" *Stree*t, 929 F.2d at 540 (quoting *Harlow*, 457 U.S. at 819. According to *Lutz*, this issue would be the only fact issue that could be submitted to the jury. *Lutz*, 784 F.2d at 343; *see also Walker v. Elbert*, 75 F.3d 592, 598-99 (10th Cir. 1996) (noting that qualified immunity is a jury question only when special circumstances are presented, i.e., when the defendant raises the defense of exceptional circumstances); *Street,* 929 F.2d at 540 ("[w]hen the jury decided Instruction No. 18 in the affirmative, it decided that the force used by the officer was unreasonable under the circumstances. There could, therefore, be no 'extraordinary circumstances' excusing the defendant's conduct").

Thus, if the court finds that the law was clearly established, then generally the defense fails and the jury is left with the issue of whether the law was violated, as given in the regular instructions. *See Skevofilax v. Quigley*, 586 F. Supp. 532, 541 (D. N.J. 1984). The only issue that could be submitted to the jury on a qualified immunity defense would then be if a defendant raises exceptional circumstances where he is trying to prove that he neither knew or should have known of the relevant legal standard. *Id.*

Here, both Defendants assert that they are entitled to qualified immunity because their conduct did not violate Plaintiffs' constitutional rights. In this case, Plaintiffs assert

that Defendants Klinkerman and Casper violated their First Amendment rights by committing viewpoint discrimination. Defendants argue that, when the President chooses to speak, he need not allow any person the opportunity to express a contrary viewpoint during his speech. Defendants cite to *Sistrunk v. City of Strongville*, 99 F.3d 194, 196-200 (6th Cir. 1996), for the proposition that when the government itself is speaking it not only has the right to speak, but also the complementary right to exclude from its speech those who express a contrary message.

In *Sistrunk*, which I find to be persuasive, the plaintiff obtained a ticket to a Bush-Quayle rally but was denied entry because she wore "a political button endorsing Bill Clinton for President." *Id.* at 196. She was not allowed to enter the rally until she relinquished her button. *Id.* Relying on the Supreme Court's decision in *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 132 L. Ed. 2d 487, 115 S. Ct. 2338 (1995), the *Sistrunk* court held that there was no constitutional violation, since "even if plaintiff has alleged sufficient facts to establish that the city authorized the committee to exclude members of the public who sought to express a discordant message, plaintiff has not alleged that the city violated plaintiff's free speech rights; rather plaintiff has only established that the city permitted the committee to exercise its free speech rights and autonomy over the content of its own message." *Id.*

The court reasoned that " Plaintiff's only claim is that she was not permitted to participate *in the committee's speech* while expressing her own discordant views." *Id.* at 199 (emphasis in the original). Further, "[t]o require that the organizers include the buttons and signs for Bill Clinton in the demonstration would alter the message the

organizers sent to the media and other observers, even if the holders of the signs and wearers of buttons did not otherwise interfere with the pro-Bush rally." *Id.*

I find the court's reasoning particularly instructive in this case. Here, as in *Sistrunk*, Plaintiffs complaint is essentially that they were not permitted to participate *in the President's speech*. President Bush had the right, at his own speech, to ensure that only his message was conveyed. When the President speaks, he may choose his own words. See *Well v. City and County of Denver*, 257 F.3d 1132, 1143 (10th Cir. 2001)(holding that "the City of Denver is entitled to present a holiday message to its citizens without incurring a constitutional obligation to incorporate the message of any private party with something to say." "Simply because the government opens its mouth to speak does not give every outside individual or group a First Amendment right to play ventriloquist."). As such, I find that there has been no constitutional violation.

Finally, even assuming *arguendo* that Plaintiffs' constitutional rights were violated, they have failed to demonstrate that those rights were "clearly established." Plaintiffs do not cite any Tenth Circuit or Supreme Court case that defines the contours of this right as it applies to a situation in which the President, speaking in a limited private forum or limited nonpublic forum, excludes persons for the reasons identified in this Order. As such, I find that Defendants Casper and Klinkerman are entitled to qualified immunity.

Based on the foregoing, it is

ORDERED that Defendant Jenkins' Motion to Dismiss or in the Alternative for Summary Judgment, filed February 1, 2008 (docket #99) is **GRANTED** as to the Motion

to Dismiss.  It is

FURTHER ORDERED that Defendant Klinkerman's Motion to Dismiss Based on Qualified Immunity, filed February 4, 2008 (docket #105) is **GRANTED**.  It is

FURTHER ORDERED that Defendant Casper's Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim Upon Which Relief May Be Granted on the Basis of Qualified Immunity, filed February 1, 2008 (docket # 102) is **GRANTED**.

Dated:  November 6, 2008

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief Judge